

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

MEF
F. #2019R00857

*610 Federal Plaza
Central Islip, New York 11722*

October 19, 2021

<u>By ECF</u>

Honorable Denis R. Hurley
United States District Judge
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Brett Ofsink
                <u>Criminal Docket No. 19-290 (DRH)</u>

Dear Judge Hurley,

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for November 2, 2021 at 10:30 a.m., and in response to the defendant's October 12, 2021 sentencing submission (hereinafter "Def. Mem."). On March 19, 2021, the defendant pled guilty pursuant to a plea agreement to Count One of a two-count indictment, which charged the defendant with the receipt of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). For the reasons stated below, the government respectfully submits that a sentence of 120 months' custody is reasonable and appropriate in this case.

      I.    <u>Background</u>

      The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR"), to which the government has no objection.

      A.    <u>The Initial Lead</u>

      The Federal Bureau of Investigation ("FBI") began investigating this case in April 2019, when it received a lead regarding an individual, with the username "JoshJamie516" (the "JoshJamie516 User"), who was using an application called "Kik" to communicate with an undercover agent (the "Undercover") regarding sexual acts in which the JoshJamie516 User had supposedly engaged with his daughter. PSR ¶ 4. As part of those communications, which occurred on or about April 26, 2019, the JoshJamie516 User sent the Undercover pictures of young girls, between the approximate ages of 8 and 13 years old, in bathing suits, who he claimed were his daughter and her friends. <u>Id.</u> Additionally, the

JoshJamie516 User said, "dad here with daughter – any others?/pm."[1]  Id.  The JoshJamie516 User also said that his daughter was "14 and we play."  Id.  Based on these communications and their subsequent investigation, the agents suspected that the defendant, likely the JoshJamie516 User, was potentially molesting his female child.

### B. The Knock and Talk

On the morning of May 31, 2019, FBI agents went to the defendant's home in Syosset, New York to conduct a "knock and talk."  Id. at ¶ 5.  Shortly after they arrived, the defendant emerged from his home.  When approached, the defendant agreed to speak with the agents, who informed him that they were investigating possible inappropriate use of a computer and child exploitation.  Id.  During their ensuing conversation, the defendant stated in substance that he used Kik on his computer, through a program called BlueStacks, which is a software application that enables a computer to operate as if it was an Android device.  Id.  Additionally, the defendant admitted sending photographs of an apparent 9 year-old female to the Undercover, but denied that these were actual photos of his daughter.  Id.  The defendant also gave the FBI written and oral consent to search his computer (the "Computer"), disclosed the password to the Computer and physically gave the agents the Computer so that they could conduct the search.  Id.[2]

### C. Forensic Evidence from the Computer

A forensic review of the Computer revealed a large collection of child pornography in a folder called "Blue Stacks".  Id.  In total, the FBI located 7,858 images and 1,001 videos depicting child pornography on the defendant's computer.  Id.  These materials include numerous videos in which toddler and infant aged children are being sexually abused.  Id.  For example, there is a video of approximately 74 seconds in length that depicts a female toddler naked from the waist down being anally penetrated by an adult male's penis; there is a video of approximately 63 seconds in length that depicts a male toddler naked from the waist down penetrating an adult female vaginally with his penis, and in which the adult female holds the toddler by his buttocks and simultaneously spreads the toddler's buttocks and exposes his anus to the camera; and there is a video approximately 10 seconds in length depicting a naked prepubescent female being anally penetrated by an adult male's penis.  Id.  These three videos are representative of numerous others in the

---

[1]     "PM" is a common online abbreviation for "private message."

[2]     Although the defendant later denied that this consent was given voluntarily, which he asserted in a motion to a suppress that was litigated before United States Magistrate Judge Arlene Lindsay, the Court denied this motion in its entirety.  Order on Motion to Suppress, ECF No. 53.  Additionally, the Court found that the defendant's testimony—to the effect that he did not realize the agents were going to search his computer after he handed it over to them and gave them the password—was "incredible."  Id. at 12.

defendant's collection. Id.[3]  Additionally, based on a report prepared by the National Center for Missing and Exploited Children (NCMEC), known victims, all of whom were in fact minors during the period of their sexual abuse, were identified in 716 image files and 39 video files possessed by the defendant. Addendum to PSR at 1.

In addition to the defendant's vast collection of videos and images, the FBI located data on the Computer regarding files that were recently accessed using the Computer that were stored on external devices. Numerous files in this category had names consistent with child pornography. For example, files that were recently accessed on the Computer from an external source include those with the file names: "Kait_6yo.avi", "3YoLeah.avi", "tvg - milkyway pthc kleuterkutje pedo - (movie compilation)-1 (1).avi" and "Two Men Blow Boy BJ. 1.36 (1).avi," to name a few.[4]  Although the FBI did not recover these particular files, the data indicates that the defendant stored child pornography on external devices, which were not obtained with the Computer. Similarly, data regarding the internet searches on the Computer revealed approximately 78 searches containing the word "jailbait" on April 12, 2019 alone.[5]  Additionally, within BlueStacks, the FBI located screenshots of the defendant's chats, which contained videos and images of child pornography, including one where a prepubescent female is performing oral sex on an adult male. Thus, to the extent that the defendant attempts to minimize his conduct by claiming that he did not "manually" download, save or collect child pornography files on the Computer (Def. Mem. at 4)—which is irrelevant for liability or sentencing purposes—he is being disingenuous.

Relatedly, the FBI recovered evidence that the defendant participated in chat conversations online during which he shared nude images of his wife. PSR ¶ 6. These pictures were taken and shared without her knowledge. Id. Notably, they were largely recovered in the main portion of the Computer, and not within the more secretive "BlueStacks" software program. Additionally, from within the BlueStacks folder, the FBI recovered at least one non-pornographic image of the defendant's daughter, at the

---

[3]  The defendant's claim that "merely visiting [a site with child pornography] would cause his computer to automatically 'cache' each and every one of the files featured on the share site" (Def. Mem. at 4) is inaccurate. In fact, videos do not automatically cache—they must be played, at least in part, for this to happen. Thus, the defendant, whose child pornography collection includes 1,001 videos, did more than just click around on a few child pornography websites. Indeed, as the defendant admitted when he was arrested, he watched the very material he was intentionally seeking, which often featured the violent sexual abuse of extremely young children.

[4]  By way of background, "avi" files are videos, "yo" is a standard abbreviation for "years old" and "pthc" is a standard abbreviation for "pre-teen hard core."

[5]  The results included websites such as "Jailbait Sofia (10y 11y 12y) travels with daddy, 6fOxBQl5ta @iMGSRC.RU" and "10y 11y 12y 13y jailbait Ivy, image:3961 @iMGSRC.RU," to name just a few.

approximate age of 9, in which she is wearing a two-piece bathing suit, standing in a pool, with her leg stretched behind her head ("Image-1"). The most concerning aspect about Image-1 is that the defendant's daughter's face has been redacted, indicating that the defendant was prepared to or did in fact share the photo as part of his online conversations with other purported "dads" about sexually abusing their children.

    D. The Arrest

On June 7, 2019, the defendant was arrested and arraigned on a complaint, charging him with the receipt of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1). When the defendant was arrested at his home, and after he was read and acknowledged his Miranda rights, he made a statement to the FBI during which he admitted that he had "asked for, sent and received images and videos of children, some porn with kids." Id. Additionally, when the defendant was shown still images of videos depicting the sexual abuse of children, he admitted to having received them on Kik in the "last few months." Id. The defendant also admitted that he "watched videos and images [of child pornography] to completion." Id.

On June 25, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of receiving child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1), and one count of possessing child pornography, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2) (the "Indictment"). On March 19, 2021, the defendant plead guilty to Count One of the Indictment, pursuant to a plea agreement. PSR ¶ 1.

  II.    Guidelines Calculation

The Probation Department calculated the United States Sentencing Guidelines (the "Guidelines" or U.S.S.G.") range for the defendant as follows:

| | | |
|---|---|---:|
| | Base Offense Level (§ 2G2.2(b)(2)) | 22 |
| Plus: | Material involves prepubescent minors (§ 2G2.2(b)(2)) | +2 |
| Plus: | Material portrays sadism/masochism, violence and the sexual abuse/exploitation of infants and toddlers (§ 2G2.2(b)(4)(A) and (B)) | +4 |
| Plus: | Offense involved use of a computer ((§ 2G2.2(b)(6)) | +2 |
| Plus: | Possession of more than 600 images (§ 2G2.2(b)(7)) | +5 |
| Plus: | Obstruction of justice | +2 |
| Less: | Acceptance of responsibility | <u>-3</u> |

Total: <u>34</u>

This calculation is two points higher than the one in the Plea Agreement, and to which the defendant stipulated. Specifically, the parties agreed that the defendant did not intend to traffic in or distribute material, pursuant to U.S.S.G. § 2G2.2(b)(1), and thus that the total offense level with acceptance points was 32. Because the defendant is in within Criminal History Category I, the applicable Guidelines Range as calculated by the Probation Department is 151 to 188 months. PSR ¶ 80. In the Plea Agreement, the parties calculated the Guidelines range as 121 to 151 months. The mandatory minimum term of imprisonment is five years. 18 U.S.C. § 2252(b).

III. <u>Appropriate Sentence</u>

The government respectfully requests that the Court impose a sentence of 120 months' custody, which is slightly below the low end of the Guidelines range in the Plea Agreement. The nature of the offense to which the defendant has pleaded guilty, the need for deterrence, and the defendant's history and characteristics all warrant a significant term of imprisonment such as this. <u>See</u> 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

Child pornography crimes represent the continuing victimization of the children depicted in these images, which are in essence, crime scene images. Possession of videos and images of abuse, alone, fosters a market for more abuse. <u>See, e.g.</u>, <u>United States v. Gouse</u>, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); <u>United States v. Miller</u>, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." <u>United States v. Williams</u>, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," <u>New York v. Ferber</u>, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, <u>Osborne v. Ohio</u>, 495 U.S. 103, 110 (1990).

Here, the defendant was found to be in possession of thousands of child pornography images, including more than 1,000 videos. These images depict the rape and sexual abuse of children, toddlers and infants, <u>i.e.</u>, it is not in any way borderline. It defies reason that the defendant could amass such a substantial collection of violent material without engaging in a dedicated effort to obtain it. Nonetheless, the defendant continues to assert that he did not "manually download", "save" or "collect" the material, as if these actions somehow render him less culpable. In reality, the defendant is actually more culpable because he intentionally used encrypted software, BlueStacks, and relied on

5

external devices to ensure that his obviously illegal conduct remained hidden. Notwithstanding these efforts, the FBI still located thousands of such images on the Computer.[6] Importantly, the FBI also found ample evidence to support the fact that the defendant specifically sought the very type of material he collected. Indeed, the defendant participated in chats about the sexual abuse of children, including his own, with the Undercover in addition to others. This evidence is corroborated by the defendant's own post-arrest statement, in which he admitted that inter alia he sought out, obtained and viewed child pornography. Thus, the notion that the defendant inadvertently slipped into the underworld of child abuse—when in fact he was supposedly interested in and seeking adult pornography—is belied by the overwhelming evidence. It is also insulting to the victims of his crimes, who continue to suffer because of his conduct. The truth is that the defendant had an intense personal desire for the material that he successfully obtained and in doing so he contributed to the demand for such material and encouraged the fetishes and fantasies of the other pedophiles with whom he was conversing online.

Relatedly, any suggestion by the defendant that the absence of love in his marriage or stress at work somehow explains his illegal conduct should be disregarded. Def. Mem. at 2-3; PSR ¶ 45. The defendant had a stable upbringing, successful career and healthy family, and he continues to receive emotional and financial support from his mother, among others. PSR ¶ 39-40, 44-46. Given his remarkably privileged life, there is no excuse for the defendant's illegal conduct, the scope and results of which he still refuses to fully accept. Additionally, in an effort to avoid taking responsibility for his actions, the defendant testified falsely at a suppression hearing, in which he denied that he voluntarily consented to a search of his computer and instead claimed that his will was overborn by two plainclothes law enforcement officers. In reality, the defendant consented to a search of the Computer because he did not think that the FBI could locate evidence of child pornography within the discrete BlueStacks program when his practice was to store the material he obtained there on external devices.

Finally, the defendant's request for a sentence of 60 months' incarceration, which would require a drastic departure from the Guidelines range of 121 to 151 months, is unjustified. Here, the defendant is not a "run of the mill offender", as he suggests. Def. Memo at 9 (citing United States v. Dorvee, 616 F.3d 174, 188 (2d Cir. 2010)). The defendant had a massive child pornography collection that included material of the worst type, he articulated a clear desire to sexually abuse his minor child and possessed redacted photos of her in a bathing suit, and he traded nude photographs of his wife online without her consent. Importantly, the defendant conversed with other individuals online about abusing children. To date, the defendant continues to minimize his conduct and remains entirely focused on his personal loss as opposed to the harm that he caused to the actual victims of his crimes. He also disregards the danger he represents to the community by virtue of the demand he created

---

[6] Notably, and in contrast to his child pornography collection, the material that related to the defendant's wife was not stored in the encrypted portion of the Computer even though it was obtained, maintained and shared without her consent.

for child pornography and his role in encouraging others to do the same. Without such recognition, it is difficult to understand what will deter him from reengaging in such conduct, other than a lengthy prison sentence. And although the Second Circuit in Dorvee did criticize the high Guidelines calculations that result from the proper application of U.S.S.G. §2G2.2, it maintained the propriety of applying the relevant enhancements and instructed courts to consider the substantive reasonableness of each sentence instead of assuming the reasonableness of the Guidelines range. See United States v. Clarke, 979 F.3d 82, 99-101 (2d Cir. 2020) (upholding below Guidelines sentence of 120 months' incarceration as substantively reasonable where defendant was convicted of transporting and receiving child pornography, each of which carry a mandatory minimum of sentence of 60 months); United States v. Chow, No. 10–4570–Cr, 2011 WL 5829616, *2 (2d. Cir. Nov. 21, 2011) (upholding sentence of 84 months as substantively reasonable in case where defendant was convicted of attempted receipt and possession of child pornography and Guidelines range was 108 to 135 months).

In light of all of these factors, a sentence of 120 months' custody would reflect the seriousness of the defendant's conduct and provide adequate deterrence to others contemplating similar acts. See 18 U.S.C. § 3553(a)(1), (a)(2)(A), and (a)(2)(B).

IV. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 120 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Megan E. Farrell
Assistant U.S. Attorney
(631) 715-7862

cc: Counsel for the defendant, by ECF
U.S. Probation Officer Gregory Giblin

7